# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
### ASHLAND, LONDON AND LEXINGTON DIVISIONS

| | |
|---|---|
| In re: | **CHAPTER 11** |
| **LICKING RIVER MINING, LLC,** **ET AL.,** | **CASE NO. 14-10201, ET AL** |
| | **JOINTLY ADMINISTERED** |
| **DEBTORS.** | **JUDGE TRACEY N. WISE** |

---

| | |
|---|---|
| **PHAEDRA SPRADLIN, CHAPTER 7** **TRUSTEE OF THE DEBTORS' ESTATES** | **PLAINTIFF** |
| **vs.** | |
| | **ADV. PRO. NO. 18-1003** |
| **EAST COAST MINER LLC, EAST** **COAST MINER II LLC, KEITH GOGGIN,** **AND MICHAEL GOODWIN** | **DEFENDANTS** |

## TRUSTEE'S MOTION FOR JUDGMENT ON THE PLEADINGS

Phaedra Spradlin, as chapter 7 Trustee (the "Trustee") for Licking River Mining, LLC ("LRM") and its related Debtors in the above-captioned cases (collectively, the "Debtors[1]"), by her undersigned counsel, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure, respectfully moves for judgment on the pleadings against Defendants East Coast Miner LLC ("ECM"), East Coast Miner II LLC ("ECM II"), Keith Goggin ("Goggin") and Michael Goodwin ("Goodwin") (collectively, the "Defendants").  In support of her Motion, the Trustee states as follows:

---

[1] In addition to LRM, the Debtors in these Chapter 7 cases are U.S. Coal Corp. ("U.S. Coal"); Licking River Resources, Inc. ("LRR"); S.M. & J., Inc. ("SMJ"); Oak Hill Coal, Inc. ("Oak Hill"); Fox Knob Coal Co., Inc. ("Fox Knob"); and J.A.D. Coal Company, Inc. ("JAD"); Sandlick Coal Co. ("Sandlick"); and Harlan County, Mining, LLC ("Harlan") and U.S. Coal Marketing LLC ("USC Marketing").

## <u>INTRODUCTION</u>

The Trustee merits judgment on the pleadings on both Claims at issue in this adversary proceeding.  There is no genuine issue of material fact on those Claims, and this Court may and should rule in favor of the Trustee as a matter of law based on the pleadings, exhibits and documents of record.

The Trustee's First Claim requests a declaration that the Trustee possesses an interest in certain "Equipment Collateral" of JAD over which the "JAD Lenders"[2] held first-priority liens, senior to any alleged liens of the Defendants.  The Trustee is entitled to judgment on the pleadings on this Claim for several reasons.

*First*, for virtually all of the Equipment Collateral, Dean and the McAfees held a perfected security interest in such collateral that was senior in priority to any interest of any of the Defendants in such collateral.  Dean and the McAfees assigned that senior interest in the Equipment Collateral to the Debtors' estates (which is now held by the Trustee) pursuant to an order of this Court approving a settlement between the JAD Lenders and the estates.[3]

*Second*, ECM and ECM II's intercreditor agreements with the JAD Lenders provided that any interest of ECM or ECM II in the Equipment Collateral was subordinate to the senior security interests of the JAD Lenders in such collateral.  Under § 510(a) of the Bankruptcy Code, the Trustee may enforce that subordination agreement against the Defendants.  Moreover, Goggin and Goodwin admit that their alleged interests in the Equipment Collateral are junior to the JAD Lenders (and ECM and ECM II).

---

[2] The "JAD Lenders" are Aubra Paul Dean ("Dean"), Carl and Julia McAfee (together, the "McAfees") and Dean McAfee Holdings, LLC ("McAfee Holdings").

[3] This order is defined below and referred to herein as the "JAD Settlement Order."

2

*Third*, the JAD Settlement Order provides that "[a]ll [Equipment Collateral] and proceeds thereof shall be retained by the Debtors' Estates for disposition in the sole discretion of the Debtors' Estates."  The JAD Settlement Order is a final order that precludes the Defendants from challenging the Trustee's senior interests in the Equipment Collateral.

*Fourth*, the Defendants are bound by their prior admissions in the Debtors' cases that they only held *junior liens* on the Equipment Collateral.

The Trustee's Second Claim requests a declaration that the Defendants do not hold "Adequate Protection Liens" (under this Court's final cash collateral order) on "Avoidance Actions," "Specified Litigation Claims," or the proceeds thereof.  The Trustee is entitled to judgment on this Claim because the final cash collateral order unambiguously provides that any alleged "Adequate Protection Liens" of the Defendants ***do not*** extend to "Avoidance Actions," "Specified Litigation Claims" or the proceeds thereof.

## **BACKGROUND**[4]

### I.    **The JAD Lenders Acquire A Security Interest In Equipment Collateral As Part Of The JAD Acquisition**

U.S. Coal was the ultimate parent company for the other Debtors.  The Debtors operated through two divisions:  the "Licking River Division" and the "JAD Division."  The "JAD Division" was formed through the acquisition (the "JAD Acquisition") of Debtors JAD, Fox Knob, Sandlick and Harlan from Dean and the McAfees (JAD, Fox Knob, Sandlick and Harlan

---

[4] Citations to the Complaint in this adversary proceeding [Dkt. No. 1] (the "Complaint") are referred to as "Complt."  Citations to the Defendants' Answer filed in this adversary proceeding [Dkt. No. 11] are referred to as "Ans."  Citations to docket entries in this adversary proceeding are referred to as "Dkt. No. ___."  Citations to docket entries in the Trustee's other adversary proceeding against the Defendants, Adv. No. 15-1004 (the "Main Adversary"), are referred to as "Main Adv. Dkt. No. ___."  Finally, citations to the docket entries in the Debtors' bankruptcy cases, Case No. 14-10201, are referred to as "Bankr. Dkt. No. __."

4832-8646-4878.2

are referred to collectively as the "JAD Debtors").    JAD is a Virginia corporation.  (Complt. ¶¶ 12-13; Ans. ¶¶ 12-13).

Although the JAD Acquisition closed on April 15, 2008, the original Stock Purchase Agreement for the JAD Acquisition was dated June 19, 2007 (the "JAD SPA").  A true and correct copy of the JAD SPA is attached as <u>Exhibit 1</u> to the Complaint.  The JAD SPA was amended various times before the JAD Acquisition closed.  The final schedules to the JAD SPA, dated April 9, 2008, are attached as part of <u>Exhibit 2</u> to the Complaint (the "JAD Schedules").

As part of its consideration for the purchase of the JAD Division, U.S. Coal executed a promissory note in favor of Dean (the "Dean Note") and a promissory note in favor of the McAfees (the "McAfee Note," and together with the Dean Note, the "JAD Seller Notes").  Each of the JAD Seller Notes were issued in the original principal amount of $3.5 million.[5]

At the time of the JAD Acquisition, both Dean and the McAfees (who are among the JAD Lenders) received a security interest in, among other things, the following equipment assets of the JAD Debtors (collectively, the "Equipment Collateral"):

| ITEM | DESCRIPTION | SERIAL # |
|------|-------------|----------|
| 1 | REINCO 1000 GAL HYDRO SEEDER | |
| 2 | BOBCAT LOADER | 9628 |
| 3 | KOMATSU WA450 LOADER | 53378 |
| 4 | JOHN DEERE TC62H LOADER | DWTC62H574125 |
| 5 | JOHN DEERE 644H LOADER | DW644HX574038 |
| 6 | EUCLID R90 HAUL BACK TRUCK | 75689 |
| 7 | EUCLID R90C HAUL BACK TRUCK | 76572 |

---

[5] True and correct copies of the JAD Seller Notes were filed by the estate of Dean and the McAfees in this Court's record at Bankr. Dkt. Nos. 893-2 and 894-2, respectively, and are also attached hereto as <u>Exhibits A and B</u>.  There are exhibit cover pages in this Court's bankruptcy record for these exhibits (and Exhibits C-F, cited below) because Dean and the McAfees filed these documents as "exhibits" to their pleadings.  Those cover pages are deleted here to avoid the confusion of having two, sometimes-conflicting exhibit cover pages.

4832-8646-4878.2

| 8 | Ingersoll Rand DM45 Drill | 7653 |
| 9 | HITACHI EXCAVATOR EX1100BE | 17E02070 |
| 10 | JOHN DEERE FF270 EXCAVATOR | FF2700CX071138 |
| 11 | CASE 40XT SKID LOADER | JAF0387528 |
| 12 | KOMATSU WA500 LOADER | A72143 |
| 13 | INGERSOLL RAND DM45EXL900 DRILL | 7864 |
| 14 | 2004 JOHN DEERE 310SG BACKHOE | TO310SG941107 |
| 15 | Euclid R90 Hauler Truck (Used) | 75582 |
| 16 | Komatsu WA500-3LK Loader (New) | A72314 |
| 17 | HITACHI 1900 EXCAVATOR (New) | 18COOT-000158 |
| 18 | John Deere 310 Backhoe (Purchased Dec 05) | T0310SG937772 |
| 19 | Komatsu WA500-3LK Loader | A72427 |
| 20 | Hitachi ZX350 Excavator | 51495 |
| 21 | Euclid R85 Truck | 74658 |
| 22 | Cedarapids 2549 Portable Jaw Crusher | 6278 |
| 23 | JD 350D Excavator | 805307 |
| 24 | Cat D-10R dozer | 1637 |

(Complt, Ex. 2, Disclosure Sch. 3.19).

On May 6, 2008, Dean and the McAfees filed UCC financing statements in the Virginia

Secretary of State's Office as Document Nos. 0805211657 and 0805211658 (the "Dean-McAfee

UCC Statements"), naming Dean and the McAfees as secured parties, JAD as the debtor, and the

Equipment Collateral as their collateral.   True and correct copies of the Dean-McAfee UCC

Statements, with applicable amendments, are attached as Exhibits 3 and 4 to the Complaint.

The Dean-McAfee UCC Statements perfected Dean and the McAfees' security interests

in the Equipment Collateral, with the exception of Nos. 13, 20, 22 and 23 listed above (the "2010

Perfected Collateral").   (Dean-McAfee UCC Statements, Complt. Exs. 3-4).   The 2010 Perfected

Collateral, however, was owned by JAD as of the closing of the JAD Acquisition on April 15,

2008, as reflected in the JAD Schedules.   (Complt, Ex. 2, Disclosure Sch. 3.19).

Dean subsequently died.   His interest in the Dean Note passed to the following in equal

shares: (i) Jeffrey Paul Dean, Trustee of the Trust for Jeffrey Paul Dean (GS Exempt), under

Agreement dated August 29, 2008; (ii) Donna Mae Kolb, Trustee of the Trust for Donna Mae

Kolb (GS Exempt), under Agreement dated August 29, 2008; and (iii) Aubra Brian Dean,

Trustee of the Trust for Aubra Brian Dean (GS Exempt), under Agreement dated August 29,

2008 (collectively, the "Deans").  (Bankr. Dkt. No. 887).

On April 30, 2010, Dean and the McAfees filed a UCC financing statement in the

Virginia Secretary of State's Office as Document No. 1005310030 (the "2010 UCC Statement"),

naming Dean and the McAfees as secured parties, JAD as the debtor and, among other things,

the 2010 Perfected Collateral as their collateral.  A true and correct copy of the 2010 UCC

Statement is attached as Exhibit 5 to the Complaint.

The JAD Seller Notes have twice been amended and restated, most recently in December

2011.  (Complt. ¶ 21; Ans. ¶ 21).  However, Dean's and the McAfees' respective security

interests in the Equipment Collateral never changed (until assigned to the Debtors' estates, as

discussed below).[6]

## II.    The Defendants' Involvement With The Debtors And Their Intercreditor Agreements With The JAD Lenders And Others

On December 11, 2008, U.S. Coal issued two unsecured notes, each in the original

principal amount of $1 million – one to Goggin and one to Goodwin.  (Complt. ¶ 22; Ans. ¶ 22).

The JAD Debtors neither guaranteed these notes nor pledged any assets as security for these

notes.  (Main Adv. Dkt. No. 191-1, at pp. 16-17, ¶ 1 (Goggin admitting that the JAD Debtors

---

[6] True and correct copies of the September 30, 2009 and December 7, 2011 JAD Seller Notes were filed by the estate of Dean in this Court's record at Bankr. Dkt. Nos. 893-3 and 893-4 (see Exhibits C and D hereto), and by the McAfees in this Court's record at Bankr. Dkt. Nos. 894-3 and 894-4 (see Exhibits E and F hereto).

4832-8646-4878.2

were not obligated on the notes); Main Adv. Dkt. No. 192-1 at p. 14, ¶ 1 (same admission for Goodwin)).

On January 9, 2009, U.S. Coal issued two additional unsecured notes in the original principal amount of $450,000 – again, one to Goggin and one to Goodwin. (Complt. ¶ 23; Ans. ¶ 23). The JAD Debtors neither guaranteed these notes nor pledged any assets as security for these notes. (Main Adv. Dkt. No. 191-1, at pp. 16-17, ¶ 1 (Goggin admitting that the JAD Debtors were not obligated on the notes); Main Adv. Dkt. No. 192-1 at p. 14, ¶ 1 (same admission for Goodwin)).

ECM was formed in 2009. ECM did not have any alleged loans to the Debtors before September 30, 2009. (Complt. ¶ 24; Ans. ¶ 24). On September 30, 2009, after ECM's acquisition of another entity's positions at the Debtors, the Debtors entered into a credit agreement and security agreement with ECM that purported[7] to, among other things, grant ECM a junior security interest in the Equipment Collateral. (Complt. ¶ 25; Ans. ¶ 25).

Also on September 30, 2009, JAD, Sandlick, Fox Knob, Dean, the McAfees, CAMOFI Master LDC and ECM entered into a First Amended and Restated Intercreditor and Subordination Agreement (the "2009 Intercreditor Agreement"). A true and correct copy of the 2009 Intercreditor Agreement is attached as <u>Exhibit 6</u> to the Complaint. (Complt. ¶ 26; Ans. ¶ 26). Pursuant to Section 2 of the 2009 Intercreditor Agreement, ECM agreed that Dean and the McAfees – as the "First Priority Creditor" – had a security interest in all of the Equipment Collateral that was senior to the interest of ECM. (Complt., Ex. 6, at § 2).

---

[7] As noted in the Main Adversary, the Trustee does not believe that the Defendants possess valid liens or claims against the Debtors. For purposes of this adversary – and the baseless statements that the Defendants have made regarding their alleged "interests" in the Equipment Collateral and other matters noted herein – it does not matter if the Trustee will prevail in the Main Adversary.

On October 14, 2009, ECM, via Wilmington Trust Co. ("Wilmington Trust"), filed a UCC financing statement in the Virginia Secretary of State's office as Document No. 0910221109 (the "ECM UCC Statement"), naming Wilmington Trust as collateral agent as the secured party, JAD as the debtor, and the Equipment Collateral, among other assets, as ECM's purported collateral.  A true and correct copy of the ECM UCC Statement, with applicable amendments, is attached as Exhibit 7 to the Complaint.  (Complt. ¶ 27; Ans. ¶ 27; Complt., Ex. 7).

ECM II was formed in 2011.  On December 7, 2011, U.S. Coal, JAD, Sandlick, Fox Knob, as borrowers, and LRR, LRM, Oak Hill, Harlan and USC Marketing, as guarantors, entered into a Credit Agreement with ECM II as lender (the "ECM II Credit Agreement"). (Complt. ¶ 29; Ans. ¶ 29).  The ECM II Credit Agreement provided for two term loans and purported to grant ECM II a junior security interest on all assets of each of the Debtors, including liens on the Equipment Collateral.  (Complt. ¶ 29; Ans. ¶ 29; *see also* Main Adv. Dkt. No. 195-20 (Ex. 71) (copy of ECM II Credit Agreement filed by Defendants)).

On December 5, 2011, ECM II, via Wilmington Trust as collateral agent, filed a UCC financing statement in the Virginia Secretary of State's office as Document No. 1112311130 (the "ECM II UCC Statement"), naming Wilmington Trust as collateral agent as the secured party, JAD as the debtor, and the Equipment Collateral, among other assets, as ECM II's purported collateral.  A true and correct copy of the ECM II UCC Statement is attached as Exhibit 8 to the Complaint.  (Complt. ¶ 30; Ans. ¶ 30).

On December 7, 2011, McAfee Holdings, an entity created by Dean and the McAfees, made a loan to the Debtors.  (Complt. ¶ 31; Ans. ¶ 31).  Also on December 7, 2011, JAD, Sandlick, Fox Knob, Dean, the McAfees, McAfee Holdings, ECM, ECM II and Wilmington

8

Trust Co. as collateral agent for ECM and ECM II, entered into an Intercreditor and Subordination Agreement (Assets) (the "2011 Intercreditor Agreement" and, together with the 2009 Intercreditor Agreement, the "Intercreditor Agreements"). A true and correct copy of the 2011 Intercreditor Agreement is attached as <u>Exhibit 9</u> to the Complaint. (Complt. ¶ 32; Ans. ¶ 32). Pursuant to Section 2 of the 2011 Intercreditor Agreement, ECM and ECM II agreed that the JAD Lenders – as the "First Priority Creditor" – had a security interest in all of the Equipment Collateral that was senior to the interests of ECM and ECM II. (Complt., Ex. 9, § 2).

On February 1, 2013, U.S. Coal issued two secured promissory notes, each in the amount of $1,097,620.03, one to Goggin and the other to Goodwin (the "2013 Notes"). (Complt. ¶ 34; Ans. ¶ 34). The 2013 Notes replaced Goggin and Goodwin's unsecured notes originally issued in 2008 and 2009. The 2013 Notes purported to be secured by certain assets of the JAD Debtors, including the Equipment Collateral. (Main Adv. Dkt. Nos. 193-4 and 193-7 (Exs. 87, 90) (2013 Notes filed by the Defendants)).

On February 13, 2013, Goggin and Goodwin, via Wilmington Trust, N.A. as collateral agent, filed a UCC financing statement in the Virginia Secretary of State's office as Document No. 1302321313 (the "Goggin-Goodwin UCC Statement"), naming Wilmington Trust, N.A. as collateral agent as the secured party, JAD as the debtor, and the Equipment Collateral, among other assets, as Goggin and Goodwin's purported collateral. A true and correct copy of the Goggin-Goodwin UCC Statement is attached as <u>Exhibit 10</u> to the Complaint. (Complt. ¶ 35; Ans. ¶ 35).

As Goggin and Goodwin admit, their alleged liens "are junior to other Senior Debt Lenders, including ECM, ECM II, the JAD Sellers (i.e., the JAD Lenders), and the CAM Entities." (Main Adv. Dkt. No. 191-1, at 19, ¶ 16; Main Adv. Dkt. No. 192-1, at 16, ¶ 13).

### III.    The Final Cash Collateral Order Precludes The Defendants From Asserting "Adequate Protection" Liens Against "Specified Litigation Claims" Or "Avoidance Actions"

Between May 22, 2014 and June 10, 2014, involuntary petitions were filed against each of the Debtors in this Court.  On June 12, 2014, orders for relief were entered in each Debtor's chapter 11 case, except that an order for relief was entered in U.S. Coal's case on June 27, 2014.[8]

On September 5, 2014, this Court entered the Final Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection To The Licking River Lenders, And (III) Granting Related Relief  (the "Cash Collateral Order").  (Bankr. Dkt. No. 447).  The term "Licking River Lenders," as used in the Cash Collateral Order, refers to the Defendants.  (*Id.* at Recital (I), p. 3, n.2).  The term "JAD Lenders," as used in the Cash Collateral Order (and herein), refers to Dean, the McAfees and McAfee Holdings.  (*Id.*).

The Cash Collateral Order granted each of the Defendants so-called "Adequate Protection" liens:

> . . . [A] valid, binding, continuing, enforceable, fully-perfected, non-avoidable replacement first priority lien, to the fullest extent permissible by applicable law, on all previously unencumbered property . . . [of the Debtors] . . . (collectively, the "Unencumbered Collateral"); *provided that* the term "Unencumbered Collateral" **shall not include** either (a) **any claim or cause of action of the Debtors' estates under chapter 5 of the Bankruptcy Code**, including sections 502(d), 510, 544, 545, 547, 548, 549, 550 or 551 of the Bankruptcy Code (collectively, the "Avoidance Actions") **or any proceeds thereof**, including, without limitation, any property against which a lien is avoided under section 544(a) of the Bankruptcy Code; or (b) **any claim or cause of action** of the Debtors' estates against (I) **any director**, officer or **shareholder of the Debtors**, (II) **any other insider (as defined under section 101(31) of the Bankruptcy Code) of the Debtors**, or (III) **the Licking River Lenders, the JAD Lenders or Pryor Cashman or**

---

[8] The exception is that on November 4, 2014, voluntary chapter 11 petitions were filed for each of Harlan, Oak Hill, Sandlick and USC Marketing in accordance with this Court's order that authorized and directed such Debtors to file chapter 11 petitions.  (Bankr. Dkt. No.  574).

**any proceeds of the foregoing** (the "Specified Litigation Claims").

(*Id*. at ¶ 12(b)(i) (emphasis added)).

The Cash Collateral Order also granted each of the Defendants:

> . . . [A] valid, binding, continuing, enforceable, fully-perfected non-avoidable junior priority replacement lien on, and security interest in, all property, whether now owned or hereafter acquired or existing and wherever located, of each Debtor and each such Debtor's 'estate' . . . **other than Avoidance Actions or Specified Litigation Claims** . . . .

(*Id*. at ¶ 12(b)(ii) (emphasis added)).

The Cash Collateral Order provided that the Adequate Protection Liens shall have the same relative priority as the Defendants' prepetition liens in the property of the Debtors. (*Id*. at ¶ 12(c)). Finally, the Cash Collateral Order provides as follows:

> 33.    *Avoidance Actions and Specified Litigation Claims*.    Notwithstanding anything to the contrary herein, nothing in this Final Order shall be construed, to (a) grant any person or entity a lien or other encumbrance on any Avoidance Action or Specified Litigation Claim, or (b) grant any person or entity superpriority administrative claims with respect to the proceeds of any Avoidance Action or Specified Litigation Claim.

(*Id*. at ¶ 33).

## IV.    The Defendants Admit That Their Liens Are Junior To Those Of The JAD Lenders On The Equipment Collateral

On February 11, 2015, the Defendants filed their Notice of Intent to Credit Bid on certain assets of the JAD Debtors to be sold at an auction (the "Credit Bid Notice"). (Bankr. Dkt. No. 896; Complt., Ex. 11). In the Credit Bid Notice, the Defendants admitted that they held "junior liens" that were "subject to the pre-existing liens of certain other secured lenders" on many of the JAD Debtors' assets, including all but one piece of the Equipment Collateral. (Complt., Ex. 11, ¶ 4; *id*. at Ex. A, pp. 3-5.).

The only item included in the Equipment Collateral in which the Defendants claimed a senior priority security interest is a Cedarapids portable jaw crusher, serial no. 6278 (the "Jaw Crusher"). (*See id.* at Ex. A, p. 3.) As noted above, the interests of the JAD Lenders in the Jaw Crusher were senior to any interest of the Defendants in the Jaw Crusher.

## V.    The Settlement Between The Debtors, The Committee, And The JAD Lenders

The Creditors' Committee in the Debtors' chapter 11 cases (the "Committee") conducted an extensive investigation of potential claims that could be asserted by the Debtors' estates against various parties, including the JAD Lenders. After extensive negotiations, the Debtors, JAD Lenders, and the Committee reached an agreement to settle all potential claims against the JAD Lenders.

On April 13, 2015, the Debtors, the Committee and the JAD Lenders filed the Joint Motion for Approval of Settlement Agreement Pursuant to Bankruptcy Rule 9019 (the "JAD Settlement Motion"). (Bankr. Dkt. No. 1255, Complt. Ex. 12). The JAD Settlement Motion provided, in pertinent part, that the Debtors' estates would (a) allow the JAD Lenders' claims in full, (b) settle and release all avoidance and other claims (such as equitable subordination) against the JAD Lenders, and (c) consent to the JAD Lenders receiving the proceeds of their real property collateral sold to Revelation by the Debtors.

In exchange, the JAD Lenders agreed to the following:

      a.      Transfer $250,000 in cash to the Debtors' estates;

      b.      Transfer the Equipment Collateral to the Debtors' estates under 11 U.S.C. §§ 544-551;

      c.      Transfer the interests of Jeffrey Dean and Julia McAfee in USC Management, LLC to the Debtors' estates; and

      d.      Transfer an interest in a building to the Debtors' estates (the "Building").

(Complt. Ex. 12, pp. 5-7, ¶ 13).

12

The Defendants did not object to the JAD Settlement Motion.  (Complt. ¶ 59; Ans. ¶ 59). On April 16, 2015, this Court entered the Agreed Order Approving Settlement Pursuant to Bankruptcy Rule 9019  (the "JAD Settlement Order").  (Bankr. Dkt. No. 1267, Complt. Ex. 13). The JAD Settlement Order approved the JAD Settlement Motion, with the exception that the JAD Lenders paid the Debtors' estates an additional $25,000 in cash (for a total of $275,000) and the reference to the Building was deleted.  (*Id.* at 7, ¶ E(iii)).

The JAD Settlement Order provided, among other things, that "[t]he JAD Lenders shall release and transfer their liens on [the Equipment Collateral] to the Debtors' estates under 11 U.S.C. §§ 544-551.  All [Equipment Collateral] and proceeds thereof shall be retained by the Debtors' Estates for disposition in the sole discretion of the Debtors' Estates."  (*Id.* at 5-6, ¶ D). All conditions precedent to the consummation of the agreement set forth in the JAD Settlement Order were satisfied.  Thus, by final order of this Court, the Trustee has now succeeded to the JAD Lenders' interests in the Equipment Collateral.

## VI.    The Appointment Of The Trustee And The Liquidation Of The Equipment Collateral

On April 27, 2015, the Trustee was appointed as chapter 7 trustee for the each of the Debtors, thereby succeeding to the interests of the Debtors' estates conveyed by the JAD Lenders under the JAD Settlement Order.  (Bankr. Dkt. No. 1309; Complt. ¶¶ 2, 64).   On July 9, 2015, the Trustee auctioned the JAD Equipment Collateral pursuant to order of this Court and the net proceeds realized were $601,157.44.  (*See* Report of Sale of Mining Equipment Belonging to J.A.D. Coal Company, Inc. By Auction on July 9, 2015 (Bankr. Dkt. No. 1629); Complt. ¶ 65; Ans. ¶ 65)).

**ARGUMENT**

I.     **A Rule 12(c) Motion Should Be Granted When The Pleadings, Exhibits And Matters Of Public Record Demonstrate That The Movant Is Entitled To Judgment As A Matter Of Law**

Federal Rule of Civil Procedure 12(c), incorporated herein by Bankruptcy Rule 7012, "permits the parties to move for judgment after the pleadings are closed but early enough to avoid delaying the trial." *In re Roy*, 547 B.R. 760, 763 (Bankr. E.D. Ky. 2016); Fed. R. Civ. P. 12(c).  Courts grant a Rule 12(c) motion "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)); *see also Roy*, 547 B.R. at 764 ("The Court must grant a 12(c) motion when there is no issue of material fact and the moving party is entitled to judgment as a matter of law.").

When a plaintiff moves for judgment on the pleadings under Rule 12(c), "the motion should be granted if 'on the undenied facts alleged in the complaint and assuming as true all the material allegations of fact in the answer, the plaintiff is entitled to judgment as a matter of law.'" *Mitsui Rail Capital, LLC v. Detroit Connecting R.R. Co.*, No. 2:13-cv-13502, 2014 U.S. Dist. LEXIS 96428, at *4 (E.D. Mich. July 16, 2014) (quoting *U.S. v. Blumenthal*, 315 F.2d 351, 352 (3d Cir. 1963)); *Wells Fargo Bank, N.A. v. Pt. Dume Shopping Ctr., LLC*, No. 5:16-cv-00044, 2017 U.S. Dist. LEXIS 1689, at *4 (N.D. Ohio Jan. 5, 2017) (quoting cases); *see also Winget*, 510 F.3d at 587 (affirming judgment on the pleadings in favor of the plaintiff).  The Court "need not accept as true legal conclusions or unwarranted factual inferences" made by the party opposing a 12(c) motion.  *Winget*, 510 F.3d at 581-82 (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).

14

In deciding a Rule 12(c) motion, this Court may consider, in addition to the pleadings, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[]." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)); *see also Lowden v. County of Clare*, 709 F. Supp.2d 540, 546 (E.D. Mich. 2010).  Here, as discussed below, the allegations in the pleadings, exhibits attached thereto and matters of record demonstrate that there is no issue of material fact and that the Trustee is entitled to judgment as a matter of law.

II.    **The Trustee Is Entitled To Judgment On The Pleadings On Both Claims In Her Complaint**

    A.    **The Trustee Is Entitled To Judgment On Her First Claim Because She Possesses An Interest In The Equipment Collateral That Is Senior To Any Alleged Interest Of The Defendants**

The Trustee's First Claim in the Complaint requests a declaration that the Trustee possesses an interest in the Equipment Collateral that is superior to any alleged interest in such collateral asserted by the Defendants.  The Trustee is entitled to judgment on the pleadings on this Claim for several independent reasons.

    1.    **Dean And The McAfees Possessed Senior Liens On The Equipment Collateral That They Assigned To The Debtors' Estates**

The first reason that the Trustee is entitled to judgment on her First Claim is that Dean and the McAfees possessed senior liens on the Equipment Collateral that they assigned to the Debtors' estates under the JAD Settlement Order.  Section 9-322 of the Uniform Commercial Code, which applies in Virginia,[9] provides that if there are conflicting security interests in collateral, the first creditor to file or perfect its interest in that collateral has priority.  *See* VA. CODE ANN. § 8.9A-322(a)(1); *see also In re Highland Constr. Mgmt. Servs.*, 497 B.R. 829, 837

_____

    [9] As noted above, JAD is a Virginia corporation.

4832-8646-4878.2

(Bankr. E.D. Va. 2013) ("The priority of parties secured by a perfected security interest is governed by Va. Code (1950) §8.9A-322 and is generally a first in time standard."); *In re Vission, Inc.*, 400 B.R. 215, 219 (Bankr. E.D. Wis. 2008) ("The general rule for priority of conflicting perfected security interests is that the first to file a financing statement or otherwise perfect its security interest has priority.").

Here, Dean and the McAfees filed the Dean-McAfee UCC Statements on May 6, 2008, perfecting their interest in all of the Equipment Collateral except for the 2010 Perfected Collateral (which was perfected in 2010).  (*See* Complt., Exs. 3 and 4).  The first financing statement filed by any Defendant was the ECM UCC Statement that ECM filed on October 14, 2009.[10]  (*See* Complt., Ex. 7; see also Complt. ¶ 27; Ans. ¶ 27).

Accordingly, Dean and the McAfees were the "first to file or perfect" under § 9-322 of the UCC and, therefore, possessed security interests in all Equipment Collateral – except for the 2010 Perfected Collateral – that were senior to any alleged interest of the Defendants.[11] Moreover, under the JAD Settlement Order, Dean and the McAfees agreed to "release and transfer their liens on [the Equipment Collateral] to the Debtors' estates under 11 U.S.C. §§ 544-551."

The Trustee, as the representative of the Debtors' estates and the assignee of Dean and the McAfees, therefore possesses an interest in the Equipment Collateral and the proceeds thereof that is senior to any alleged interest in such collateral held by the Defendants.  On this

---

[10] ECM II filed a financing statement in 2011 and Goggin and Goodwin filed financing statements in 2013.

[11] The fact that McAfee Holdings never filed a financing statement for the Equipment Collateral is not relevant to this argument.  Dean and the McAfees – who indisputably filed prior financing statements and, therefore, held interests senior to the Defendants – assigned their interests to the estates.

basis alone, the Trustee is entitled to judgment on her First Claim for all Equipment Collateral

except for the 2010 Perfected Collateral.[12]

### 2.    The Trustee Is Entitled To Enforce The Intercreditor Agreements Against The Defendants Under § 510(a) of the Bankruptcy Code

The second reason that the Trustee is entitled to judgment on her First Claim is that she is

entitled to enforce the terms of the Intercreditor Agreements against the Defendants under §

510(a) of the Bankruptcy Code.  Section 510(a) provides that "a subordination agreement is

enforceable in a case under this title to the same extent that such agreement is enforceable under

applicable nonbankruptcy law." 11 U.S.C. § 510(a); *Carrieri v. Jobs.com, Inc.*, 393 F.3d 508,

527 (5th Cir. 2004); *Fitness Int'l, LLC v. Buttermilk Towne Ctr., LLC (In re Buttermilk Towne

Ctr., LLC)*, Case No. 10-21162, Adv. No. 10-2032, 2010 Bankr. LEXIS 4910, at *6 (Bankr. E.D.

Ky. Dec. 30, 2010).

The first step under § 510(a) is to determine whether the agreement is a "subordination

agreement within the meaning of section 510(a)." *Buttermilk Towne Ctr.*, 2010 Bankr. LEXIS

4910, at **6-7.  An intercreditor agreement to prioritize lien and payment rights from a debtor –

such as the Intercreditor Agreements – is a common form of subordination agreement.[13]  *See*,

*e.g.*, *In re Best Prods. Co.*, 168 B.R. 35, 69-70 (Bankr. S.D.N.Y. 1994) (contractual

subordination agreement between classes of creditors); *In re Franklin Bank Corp.*, 526 B.R. 527,

530-33 (D. Del. 2014) (subordination agreement between senior and junior lenders); *see also

Buttermilk Towne Ctr.*, 2010 Bankr. LEXIS 4910, at * 7 (stating that "a common type of

---

[12] The Trustee is entitled to judgment on the 2010 Perfected Collateral as well for the reasons discussed below.

[13] Indeed, as noted above, the title of each of the Intercreditor Agreements includes "Intercreditor and Subordination Agreement."

4832-8646-4878.2

subordination agreement may re-prioritize two or more creditors' lien rights or rights to collection/payment of a debt. . . .").

To enforce a subordination agreement under § 510(a), the subordination agreement must also be enforceable under applicable non-bankruptcy law.   Under New York law, which governs the Intercreditor Agreements,[14] contractual subordination agreements are enforceable.   *See Franklin Bank*, 526 B.R. at 532; *Best Prods.*, 168 B.R. at 69.

Courts routinely apply § 510(a) to enforce subordination agreements in bankruptcy cases. *See, e.g.*, *Franklin Bank*, 526 B.R. at 532 (intercreditor subordination agreements between lenders is enforceable); *Best Prods.*, 168 B.R. at 69-70 (same); *Citibank N.A. v. Smith Jones, Inc.*, 17 B.R. 128, 131 (Bankr. D. Minn. 1982) (same); *Carrieri*, 393 F.3d at 527 (subordination agreement with preferred equity holder prevents common equity holder from alleging it holds a claim); *In re Alta+Cast, LLC*, 301 B.R. 150, 153-54 (Bankr. D. Del. 2003) (enforcing subordination provision in former executive's employment agreement with the debtor).

Here, the Intercreditor Agreements provide that the JAD Lenders possessed security interests in the Equipment Collateral that were senior to any alleged interests of ECM or ECM II. (Complt., Ex. 6, § 2, Ex. 9, § 2).   The Trustee, as the representative of the Debtors' estates (including JAD, which was a party to the Intercreditor Agreements) and the assignee of the JAD Lenders, therefore is entitled to enforce the Intercreditor Agreements against such Defendants under § 510(a) of the Bankruptcy Code.   Accordingly, under § 510(a), the Trustee possesses an interest senior to ECM and ECM II on all of the Equipment Collateral.   Moreover, Goggin and Goodwin admit that their interests are even junior to those of ECM and ECM II, stating that their alleged personal liens "are junior to other Senior Debt Lenders, including ECM, ECM II, the

---

[14] *See* Complt Ex. 6, § 13, Ex. 9, § 13 (choice of law for Intercreditor Agreements is New York law).

JAD Sellers (i.e., the JAD Lenders), and the CAM Entities." (Main Adv. Dkt. No. 191-1, at 19,

¶ 16; Main Adv. Dkt.  No. 192-1, at 16, ¶ 13).

This Court therefore should enter judgment in favor of the Trustee on her First Claim of

the Complaint.

> ### 3. The JAD Settlement Order Is A Final Order That Precludes The Defendants From Challenging The Trustee's Senior Interests In The Equipment Collateral

The third reason that the Trustee is entitled to judgment on her First Claim is that the

JAD Settlement Order unambiguously provides that the Debtors' estates have the sole rights to

the Equipment Collateral and the proceeds thereof.  The JAD Settlement Order provides that

"[a]ll [Equipment Collateral] and proceeds thereof shall be retained by the Debtors' Estates for

disposition in the sole discretion of the Debtors' Estates." (JAD Settlement Order at 5-6, ¶ D).

*Res judicata* prevents the Defendants from attempting to evade the terms of the JAD

Settlement Order.  *Res judicata* bars a claim when the following elements are met:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 577-78 (6th Cir. 2008) (quoting

*Browning v. Levy*, 283 F.3d 761, 771-72 (6th Cir. 2002)); *In re HNRC Dissolution Co.*, 549 B.R.

469, 481 (Bankr. E.D. Ky. 2016) (same).

Here, the Trustee satisfies each of the elements of *res judicata*. *First*, the JAD Settlement

Order – which settled litigation claims against the JAD Lenders under Bankruptcy Rule 9019 – is

a final decision on the merits. *See, e.g.*, *In re Gibraltar Resources, Inc.*, 210 F.3d 573, 576 (5th

Cir. 2000) ("A bankruptcy court's approval of a settlement order that brings to an end [to]

litigation between parties is a 'final' order."); *In re Dominelli*, 820 F.2d 313, 316 (9th Cir. 1987)

4832-8646-4878.2

("The trustee's action, resulting in a settlement of the claim and the district court's approval of the settlement and dismissal of the action, amounts to a final judgment on the merits."); *In re Salander*, 450 B.R. 37, 48 (Bankr. S.D.N.Y. 2011) ("The Order approving the Settlement Agreement entered by this Court on October 21, 2009, is a final order entitled to 'full res judicata effect.'") (quoting *Gibraltar*, 210 F.3d at 576); *see also In re Fortier*, 161 Fed. Appx. 514, 517 (B.A.P. 6th Cir. 2005) (holding that the bankruptcy court's sale order that effectuated a settlement was a final order).

*Second*, this action is between the same parties or their privies. Creditors in a bankruptcy case that receive notice of a proposed settlement and fail to challenge that settlement in the Bankruptcy Court (or on appeal) are bound by its terms. *See, e.g.*, *In re Glenn*, 160 B.R. 837, 838 (Bankr. S.D. Cal. 1993) (holding that, under Rule 9019, all interested parties who received notice "were also parties to the settlement"); *Petitioning Creditors of Melon Produce, Inc. v. Braunstein*, 112 F.3d 1232, 1240 (1st Cir. 1997) (creditors that had notice of, and participated in, a settlement hearing were bound by the settlement); *In re Medomak Canning*, 922 F.2d 895, 903 n.5 (1st Cir. 1990) ("[W]here notice provides interested parties with sufficient opportunity to present those interests to the court prior to approval of a settlement, *res judicata* may apply to them."); *Fortier*, 161 Fed. Appx. at 517 (holding that all creditors are bound by a settlement approved by a final order).

Here, the Defendants received notice of, but did not object to, the JAD Settlement Motion. (Complt. ¶ 59; Ans. ¶ 59). They also failed to appeal the JAD Settlement Order. They are bound by the terms of the settlement.

*Third*, there is no question that any claim over rights to the Equipment Collateral "should have been litigated in the prior action." In *HNRC*, this Court applied *res judicata* against a party

that was on notice of a proposed disposition of certain funds over which it claimed an interest, yet sat on its rights. The Court reasoned that "[a]ny claim that the Horizon Debtors did not own the CTB Account funds and/or did not have the right to sell or transfer them, could (and should) have been made in the context of the bankruptcy sale procedures." *HNRC*, 549 B.R. at 482; *see also Gibraltar*, 210 F.3d at 576 (holding that a party claiming an interest in a well was bound by the bankruptcy court's settlement order governing interests in the well); *Dominelli*, 820 F.2d at 317 (holding that a junior lienholder was bound by the trustee's settlement of a senior lienholder's rights where he had an opportunity to participate in the hearing).

The same reasoning applies here. The Defendants were very active participants in the Debtors' cases and were well aware of both (a) the JAD Settlement Motion, and (b) the rights, if any, they had to the Equipment Collateral. If the Defendants believed that they had rights to the Equipment Collateral that were superior to those transferred to the estates, they should (and could) have raised those claims in opposition to the JAD Settlement Motion. They failed to do so.

*Fourth*, there is unquestionably an identity of the causes of action at issue in the JAD Settlement Order and this adversary proceeding. Identity of causes of action means an "identity of the facts creating the right of action and of the evidence necessary to sustain each action." *HNRC*, 549 B.R. at 483 (quoting *Sanders Confectionery Prods. v. Heller Fin., Inc.*, 973 F.2d 474, 484 (6th Cir. 1992)). The pertinent facts involved in the JAD Settlement Order and this adversary proceeding are the same – the rights to, and liens against, the Equipment Collateral.

Because the Trustee has satisfied each of the elements of *res judicata*, the terms of the JAD Settlement Order are binding on the Defendants. This provides an additional, independent basis for this Court to grant judgment in favor of the Trustee on her First Claim.

4.    **The Defendants Are Bound By Their Admissions That They Only Held Alleged Junior Liens On The Equipment Collateral**

The fourth reason that the Trustee is entitled to judgment on her First Claim is that the Defendants are bound by their prior admissions that their alleged liens on the Equipment Collateral were junior to the liens of the JAD Lenders.  As this Court has recognized, "[i]t is well-established that statements in pleadings are judicial admissions that are binding on the party making them."  (Bankr. Dkt. No. 1558, at 12 (the "Fee Carveout Opinion")); *see also Ahghazali v. Sec'y of Health & Human Servs.*, 867 F.2d 921, 927 (6th Cir. 1989) ("Statements in pleadings that acknowledge the truth of some matter alleged by an opposing party are judicial admissions binding on the party making them."); *Ferguson v. Neighborhood Hous. Servs. of Cleveland, Inc.*, 780 F.2d 549, 551 (6th Cir. 1986) ("[U]nder federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court.") (quoting *Brown v. Tennessee Gas Pipeline Co.,* 623 F.2d 450, 454 (6th Cir. 1980)); *United States v. Johnson*, 752 F.2d 206, 210–11 (6th Cir. 1985) ("Statements of an attorney that are directly related to the litigation at hand have been held to be within the attorney's scope of authority and binding on the client.").

Moreover, as this Court noted in the Fee Carveout Opinion:

> Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. Judicial admissions are generally binding within the proceeding in which they are made . . . . A statement must be deliberate, clear, and unambiguous to be considered a judicial admission. In order to satisfy these elements, the statement in context must amount to an express concession of a fact. . . .

Fee Carveout Opinion at 12 (quoting *Marc A. Goldman & Assocs., P.C. v. Kattouah (In re Kattouah)*, 452 B.R. 604, 608 (E.D. Mich. 2011) (citations omitted) (internal quotation marks omitted)).

Here, on February 11, 2015, the Defendants filed their Credit Bid Notice to bid on certain assets of the JAD Debtors to be sold at an auction.  (Bankr. Dkt. No. 896; Complt., Ex. 11).  In

22

the Credit Bid Notice, the Defendants admitted that they held "junior liens" that were "subject to

the pre-existing liens of certain other secured lenders" on many of the JAD Debtors' assets,

including all but one piece of the Equipment Collateral.  (Complt., Ex. 11, ¶ 4; *id.* at Ex. A, pp.

3-5.).[15]  Moreover, the Defendants failed to object to the credit bids that the JAD Lenders

submitted for the Equipment Collateral.  (Bankr. Dkt. Nos. 893-95).

The Defendants are bound by these unequivocal admissions.  Their alleged liens on the

Equipment Collateral, even if valid, were only "junior liens . . . subject to the pre-existing liens"

of the JAD Lenders.  The JAD Lenders assigned those senior liens to the Trustee under the JAD

Settlement Order.  The Trustee is entitled to judgment on her First Claim on this basis, as well.

> **B.**    **The Trustee Is Entitled To Judgment On Her Second Claim Because The
> Cash Collateral Order Unambiguously Precludes The Defendants From
> Asserting Alleged "Adequate Protection Liens" On Avoidance Actions And
> Specified Litigation Claims**

The Trustee's Second Claim in the Complaint requests a declaration that the Defendants

do not hold "Adequate Protection Liens" on Avoidance Actions, Specified Litigation Claims, or

the proceeds thereof, including the proceeds received from the JAD Lenders under the JAD

Settlement Order.  As set forth above, the Trustee holds substantial proceeds received by the

estates under the JAD Settlement Order.  The Trustee has also recovered funds through other

Avoidance Actions and Specified Litigation Claims, including her claims against CAMOFI

Master LDC.  (*See* Adv. Pro. No. 16-1003; *see also* Bankr. Dkt. No. 2205 (CAMOFI Settlement

Certification)).  The Trustee also may avoid, among other things, liens under § 544(a) of the

Bankruptcy Code in the Main Adversary.

---

[15] The only item included in the Equipment Collateral in which the Defendants claimed a
senior priority security interest was the Jaw Crusher.  (*See id.* at Ex. A, p. 3.)  As noted above,
the interests of the JAD Lenders in the Jaw Crusher were senior to any interest of the Defendants
in the Jaw Crusher.

4832-8646-4878.2

The Cash Collateral Order unambiguously provides that any alleged "Adequate Protection Liens" of the Defendants do ***not*** extend to Avoidance Actions, Specified Litigation Claims or the proceeds thereof. If a court order is unambiguous, it will be enforced as it is written under general contract principles. *See In re Dow Corning Corp.*, 456 F.3d 668, 676 (6th Cir. 2006).

Paragraphs 12(b)(i) and (ii) of the Cash Collateral Order granted each of the Defendants Adequate Protection Liens, but expressly not on Avoidance Actions, Specified Litigation Claims or the proceeds thereof. Paragraphs 12(b)(i) and (ii) provide Defendants:

> . . . [A] valid, binding, continuing, enforceable, fully-perfected, non-avoidable replacement first priority lien, to the fullest extent permissible by applicable law, on all previously unencumbered property . . . [of the Debtors] . . . (collectively, the "Unencumbered Collateral"); provided that the term "Unencumbered Collateral" **shall not include** either (a) **any claim or cause of action of the Debtors' estates under chapter 5 of the Bankruptcy Code**, including sections 502(d), 510, 544, 545, 547, 548, 549, 550 or 551 of the Bankruptcy Code (collectively, the "Avoidance Actions") **or any proceeds thereof**, including, without limitation, any property against which a lien is avoided under section 544(a) of the Bankruptcy Code; or (b) **any claim or cause of action** of the Debtors' estates against (I) **any director**, officer or **shareholder of the Debtors**, (II) **any other insider (as defined under section 101(31) of the Bankruptcy Code) of the Debtors**, or (III) **the Licking River Lenders, the JAD Lenders or Pryor Cashman or any proceeds of the foregoing** (the "Specified Litigation Claims").
>
> . . . [A] valid, binding, continuing, enforceable, fully-perfected non-avoidable junior priority replacement lien on, and security interest in, all property, whether now owned or hereafter acquired or existing and wherever located, of each Debtor and each such Debtor's 'estate' . . . **other than Avoidance Actions or Specified Litigation Claims** . . . .

(Cash Collateral Order ¶ 12(b)(i)-(ii) (emphasis added)).

Finally, Paragraph 33 of the Cash Collateral Order provides as follows:

24

33.    *Avoidance Actions and Specified Litigation Claims.*    Notwithstanding anything to the contrary herein, nothing in this Final Order shall be construed, to (a) grant any person or entity a lien or other encumbrance on any Avoidance Action or Specified Litigation Claim, or (b) grant any person or entity superpriority administrative claims with respect to the proceeds of any Avoidance Action or Specified Litigation Claim.

(*Id.* at ¶ 33).

Thus, it is crystal clear that Avoidance Actions, Specified Litigation Claims and the proceeds thereof are not subject to any of the Defendants' alleged Adequate Protection Liens. This Court should grant judgment in favor of the Trustee on her Second Claim for relief.

## **CONCLUSION**

For the reasons stated above, the Trustee respectfully requests that this Court enter an order (a) granting judgment in favor of the Trustee on both Claims in the Complaint, and (b) granting such other and further relief as is just and proper.

Dated:  November 30, 2018

By:    /s/ Geoffrey S. Goodman
Geoffrey S. Goodman, IL Bar No. 6272297
David B. Goroff, IL Bar No. 6190039
Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, Illinois 60654
(312) 832.4500 Telephone
(312) 832.4700 Facsimile
ggoodman@foley.com
dgoroff@foley.com

T. Kent Barber
KY Bar No. 092456
Barber Law PLLC
2200 Burrus Drive
Lexington, Kentucky 40513
(859) 296-4372 Telephone
kbarber@barberlawky.com

*Attorneys for Phaedra Spradlin,
Trustee for the Debtors*

4832-8646-4878.2

### <u>CERTIFICATE OF SERVICE</u>

This is to certify that the foregoing was served electronically upon the persons on the

ECF service list in this proceeding on the 30th day of November, 2018, in accordance with the

method established under this Court's CM/ECF Administrative Procedures and Standing Order.

By: <u>/s/ Geoffrey S. Goodman</u>
   Geoffrey S. Goodman IL Bar No. 6272297
   David B. Goroff IL Bar No. 6190039
   Foley & Lardner LLP
   321 N. Clark Street, Suite 2800
   Chicago, Illinois  60654
   Telephone:  (312) 832-4500
   Facsimile:    (312) 832-4700
   ggoodman@foley.com
   dgoroff@foley.com

   Kent Barber
   Barber Law PLLC
   200 Burrus Drive
   Lexington, Kentucky 40513
   Telephone:  (859) 296-4372
   kbarber@barberlawky.com

   *Attorneys for Phaedra Spradlin,*
   *Trustee for the Debtors*

4832-8646-4878.2