**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**ASHLAND, LONDON, AND LEXINGTON DIVISIONS**

| | |
|---|---|
| IN RE: | |
| | CHAPTER 7 |
| LICKING RIVER MINING, LLC, *et al.* | |
| DEBTORS | CASE NO. 14-10201 |
| | JOINTLY ADMINISTERED |
| PHAEDRA SPRADLIN, CHAPTER 7 TRUSTEE OF THE DEBTORS' ESTATES, | PLAINTIFF |
| V. | ADV. CASE NO. 18-1003 |
| EAST COAST MINER, LLC, *et al.* | DEFENDANTS |

**MEMORANDUM OPINION GRANTING TRUSTEE'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

This declaratory judgment action is before the Court on a Motion for Judgment on the Pleadings filed by Plaintiff Phaedra Spradlin, Chapter 7 Trustee of the Debtors' Estates ("Trustee") [ECF No. 22 (the "Motion")].[1] Defendants East Coast Miner, LLC ("ECM"), East Coast Miner II, LLC ("ECM II"), Keith Goggin and Michael Goodwin (collectively "Defendants") filed a Response to the Motion [ECF No. 25 (the "Response")], and Trustee filed a Reply [ECF No. 27 (the "Reply")]. The Court heard argument from the parties. For the following reasons, the Court will grant Trustee's Motion.

---

[1] "Debtors" are U.S. Coal Corporation ("U.S. Coal"), Licking River Mining, LLC ("LR Mining"), Licking River Resources, Inc. ("LR Resources"), S.M.&J., Inc. ("SMJ"), Fox Knob Coal Co., Inc. ("Fox Knob"), J.A.D. Coal Company, Inc. ("JAD"), Harlan County Mining LLC ("Harlan"), Oak Hill Coal, Inc. ("Oak Hill"), Sandlick Coal Company ("Sandlick"), and US Coal Marketing LLC ("USC Marketing").

**PERTINENT FACTUAL BACKGROUND**

Trustee's Complaint [ECF No. 1 (the "Complaint")] asserts two claims against Defendants for judicial declarations pursuant to 28 U.S.C. § 2201, *et seq*. First, Trustee requests a declaration that she holds interests in equipment sales proceeds that are senior in priority to any interests Defendants hold (Count 1). Second, she requests a declaration that Defendant do not hold a lien on certain claims Trustee has filed (or may file) to bring assets into Debtors' estates, or the proceeds of such claims (Count 2).

Trustee's Motion raises four primary arguments. She contends that (1) based on the perfection dates of security interests and by avoidance and assignment, she holds an interest in certain collateral that is senior in priority to Defendants' interests; (2) intercreditor agreements that ECM and ECM II executed establish that they have interests subordinate to Trustee's interests; (3) the Court's Order approving a settlement in Debtors' jointly-administered bankruptcy case has *res judicata* effect and precludes Defendants from disputing that Trustee has a senior interest in the collateral; and (4) the terms of a Cash Collateral Order in Debtors' case provide that Defendants do not have liens on the claims or proceeds at issue. Because the Court finds that the unambiguous terms of the Cash Collateral Order and the *res judicata* effect of the order approving the settlement resolve these claims, this memorandum opinion will set forth only the facts pertaining to those arguments.

**I.    General Background.**

U.S. Coal was the parent of the other Debtors and owned and operated their businesses as subsidiary divisions. Fox Knob, JAD, Harlan, and Sandlick constituted the "JAD Division." U.S. Coal acquired the JAD Division entities in 2008 from Aubra Paul Dean ("Dean") and Carl and Julia McAfee (together, the "McAfees"). U.S. Coal issued promissory notes to the

McAfees and to Dean, and Dean and the McAfees also received a security interest in the JAD Division entities' 24 pieces of equipment (the "Equipment Collateral"). Dean and the McAfees filed financing statements in 2008 and 2010 related to the Equipment Collateral. In 2011, Dean MacAfee Holdings, LLC ("McAfee Holdings"), an entity created by Dean and the McAfees, also made a loan to Debtors. Although the Equipment Collateral was pledged to secure this loan, McAfee Holdings never filed a financing statement.

At various times, Defendants also obtained and perfected security interests in the Equipment Collateral. In 2009, ECM acquired an interest in prior secured loans made to Debtors and filed a financing statement listing the Equipment Collateral as ECM's collateral. In 2011, ECM II made a secured loan to certain Debtors and filed a financing statement listing the Equipment Collateral as ECM II's collateral. And, in 2013, U.S. Coal issued secured promissory notes to each of Goodwin and Goggin, leading Goggin and Goodwin to file a financing statement listing the Equipment Collateral as their collateral.

## II. The Chapter 11 Cases Commence.

Beginning on May 22, 2014, a series of involuntary chapter 11 petitions were filed against six of the Debtors, including JAD and Fox Knob, and orders for relief were entered. The Court ordered joint administration of the six bankruptcy cases. On November 4, 2014, the remaining four debtors filed voluntary chapter 11 petitions and the Court entered an Order directing that these bankruptcy cases be jointly administered with the other Debtors' cases.

## III. The Cash Collateral Order.

On September 5, 2014, the Court entered the Final Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection To The Licking River Lenders, And (III) Granting Related Relief [Case No. 14-10201, ECF No. 447] (the "Cash Collateral Order"). The

term "Licking River Lenders," defined therein, refers to Defendants.   The term "JAD Lenders,"

defined therein, refers to Dean, the McAfees, and McAfee Holdings.

Among other things, the Cash Collateral Order grants Defendants first-priority "Adequate

Protections Liens" on certain collateral:

> To secure the Adequate Protection Obligations, effective as of the Relief Dates … the following security interests and liens are hereby granted to Wilmington Trust on behalf of the Licking River Lenders (all such liens and security interests, the "Adequate Protection Liens") …
>
> (i) . . . a valid, binding, continuing, enforceable, fully-perfected, non-avoidable replacement first priority lien, to the fullest extent permissible by applicable law, on all previously unencumbered property . . . [of the Debtors] . . . (collectively, the "Unencumbered Collateral"); provided that the term "Unencumbered Collateral" shall not include either (a) any claim or cause of action of the Debtors' estates under chapter 5 of the Bankruptcy Code, including sections 502(d), 510, 544, 545, 547, 548, 549, 550 or 551 of the Bankruptcy Code (collectively, the "Avoidance Actions") or any proceeds thereof, including, without limitation, any property against which a lien is avoided under section 544(a) of the Bankruptcy Code; or (b) any claim or cause of action of the Debtors' estates against (I) any director, officer or shareholder of the Debtors, (II) any other insider (as defined under section 101(31) of the Bankruptcy Code) of the Debtors, or (III) the Licking River Lenders, the JAD Lenders or Pryor Cashman or any proceeds of the foregoing (the "Specified Litigation Claims").

[*Id.* ¶ 12(b)(i).]   It also grants each Defendant:

> … a valid, binding, continuing, enforceable, fully-perfected non-avoidable junior priority replacement lien on, and security interest in, all property, whether now owned or hereafter acquired or existing and wherever located, of each Debtor and each such Debtor's "estate" (as created pursuant to section 541(a) of the Bankruptcy Code) . . . other than Avoidance Actions or Specified Litigation Claims the "Junior Collateral"[)] . . . .

[*Id.* ¶ 12(b)(ii).[2]]   The Cash Collateral Order provides: "The Adequate Protection Liens granted

to [Defendants] hereunder shall have the same relative priority as the Prepetition Liens held by

each of the [Defendants] as of the Relief Dates."   [*Id.* ¶ 12(c).]   Finally, the Cash Collateral

---

[2] The parties refer to the liens granted to Defendants under the Final Cash Collateral Order as the "Adequate Protection Liens."   The Court adopts that definition herein.

4

Order contains an additional and important paragraph regarding limiting the scope of the liens granted to Defendants:

> Notwithstanding anything to the contrary herein, nothing in this Final Order shall be construed, to (a) grant any person or entity a lien or other encumbrance on any Avoidance Action or Specified Litigation Claim, or (b) grant any person or entity superpriority administrative claims with respect to the proceeds of any Avoidance Action or Specified Litigation Claim.

[*Id.* ¶ 33.]

**IV.    The Settlement with the JAD Lenders.**

Before Debtors' cases were converted to chapter 7, the appointed Official Committee of Unsecured Creditors, Debtors, and the JAD Lenders agreed to settle all potential claims that Debtors' estates could assert against the JAD Lenders.  On April 13, 2015, Debtors, the Committee, and the JAD Lenders filed a Joint Motion for Approval of Settlement Agreement Pursuant to Bankruptcy Rule 9019 [Case No. 14-10201, ECF No. 1255] (the "Settlement Motion").  It provided, *inter alia*, that Debtors' estates would settle and release all avoidance and other claims against the JAD Lenders.  In exchange, *inter alia*, the JAD Lenders agreed to "release and transfer their liens on all [Equipment Collateral] to the Debtors' estates under 11 U.S.C. §§ 544-551."  [*Id.* ¶ 13.b.]

The Settlement Motion was noticed for a hearing on April 16, 2015.  Defendants' counsel was served with the Settlement Motion via the Court's electronic case filing system. Defendants did not object in writing to the Settlement Motion.  Defendants' counsel appeared at the hearing on the Settlement Motion and did not object on the record.

On April 16, 2015, the Court entered the Agreed Order Approving Settlement Pursuant to Bankruptcy Rule 9019 [Case No. 14-10201, ECF No. 1267] (the "Settlement Order").  It approved the Settlement Motion with limited non-pertinent revisions.  Among other things, the Settlement Order provided that "[t]he JAD Lenders shall release and transfer their liens on [the

5

Equipment Collateral] to the Debtors' estates under 11 U.S.C. §§ 544-551. All [Equipment Collateral] and proceeds thereof shall be retained by the Debtors' Estates for disposition in the sole discretion of the Debtors' Estates." [*Id*. at 5-6.] No party appealed the Settlement Order.

V.     **Conversion of Debtors' Cases to Chapter 7 and Sale of the Equipment Collateral.**

On April 24, 2015, the Court entered an order converting Debtors' cases from chapter 11 to chapter 7. On April 27, 2015, the U.S. Trustee appointed Trustee as the chapter 7 trustee in Debtors' cases.

On July 9, 2015, the Equipment Collateral was auctioned as authorized, resulting in net proceeds totaling $601,157.44. Since the sale, Defendants have asserted that their security interests in the Equipment Collateral are senior in priority to Trustee's interests, leading to this declaratory judgment action.

## JURISDICTION

This Court has jurisdiction over this adversary proceeding. 28 U.S.C. § 1334(b). Venue is proper in this District. 28 U.S.C. § 1409. The parties agree and the Court finds that all claims addressed herein are core proceedings under 28 U.S.C. § 157(b). Notwithstanding Defendants' jury demand in their Answer [ECF No. 11 (the "Answer")], at the hearing on the Motion, all parties expressly consented to this Court's entry of final orders on the claims in the Complaint.

## STANDARD OF REVIEW

Civil Rule 12(b)(6) and (c) apply in adversary proceedings pursuant to Bankruptcy Rule 7012(b).[3] The standard of review for a Civil Rule 12(c) motion for judgment on the pleadings is

---

[3] References to the Federal Rules of Civil Procedure appear as "Civil Rule ___," and references to the Federal Rules of Bankruptcy Procedure appear as "Bankruptcy Rule ____." Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

6

the same as a Civil Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011).

> "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (internal quotation marks omitted). "A motion brought pursuant to [Civil] Rule 12(c) is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Id.* (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007)).

*Coyer v. HSBC Mortg. Servs.*, 701 F.3d 1104, 1107-1108 (6th Cir. 2012).

The Complaint attaches multiple exhibits and Trustee's Motion cites them throughout. In ruling on a motion for judgment on the pleadings, a court may consider documents attached to, incorporated by, or referenced in the pleadings. FED. R. CIV. P. 10(c) (applicable to adversary proceedings pursuant to FED. R. BANKR. P. 7010); *Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999).

## ANALYSIS

**I.     Under the Doctrine of *Res Judicata*, Trustee is Entitled to a Declaratory Judgment in her Favor on Count 1.**

In 2015, the Court granted the Settlement Motion and entered the Settlement Order. No party appealed the Settlement Order, and it is a final order. Yet Defendants now claim to have interests in the Equipment Collateral superior to Trustee's interests. This amounts to a collateral attack on a final order. The doctrine of *res judicata* precludes this collateral attack and requires entry of a declaratory judgment in Trustee's favor on Count 1.

**A.     The elements of *res judicata* in the Sixth Circuit.**

This Court has explained the doctrine of *res judicata*, as applied in the Sixth Circuit and in the context of a motion to dismiss (which is analogous to a motion for judgment on the

7

pleadings), as follows:

> *Res judicata* "is the doctrine 'by which a final judgment on the merits in an action precludes a party from bringing a subsequent lawsuit on the same claim or cause of action or raising a new defense to defeat a prior judgment.'" *Bey v. Birkett*, No. 11-cv-13625, 2012 U.S. Dist. LEXIS 136165, 2012 WL 4355530, at *4 (E.D. Mich. July 30, 2012) (quoting *Stern v. Mascio*, 262 F.3d 600, 608 (6th Cir. 2001)). *Res judicata* can be raised by a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Platsis v. E.F. Hutton & Co., Inc.*, 946 F.2d 38, 42 (6th Cir. 1991). "[W]hen entertaining a motion to dismiss on the ground of *res judicata*, a court may take judicial notice of facts from a prior judicial proceeding when the *res judicata* defense raises no disputed issues of fact." *Pettingill Enters., Inc. v. Blackstone Equip. Fin., L.P. (In re Pettingill Enters., Inc.)*, Ch. 11 Case No. 11-12-10515, Adv. No. 12-1217, 2012 Bankr. LEXIS 5154, 2012 WL 5387700, at *1 (Bankr. D.N.M. Nov. 2, 2012) (quoting *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000)).
>
> "A claim is barred by the *res judicata* effect of prior litigation if all of the following elements are present: '(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.'" *Browning v. Levy*, 283 F.3d 761, 771 (6th Cir. 2002) (quoting *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997)).

*Giese v. Cmty. Trust Bank (In re HNRC Dissolution Co.)*, 549 B.R. 469, 480-81 (Bankr. E.D. Ky. 2016), *aff'd*, 585 B.R. 837 (B.A.P. 6th Cir. 2018), *aff'd*, No. 18-5674, 2019 U.S. App. LEXIS 2322 (6th Cir. Jan. 24, 2019).

### B.     The JAD Settlement Order has *res judicata* effect here.

The Settlement Order satisfies all four elements of the Sixth Circuit's test for applying *res judicata*. First, Defendants do not dispute Trustee's contention that the Settlement Order, which resolved all potential claims that Debtors could assert against the JAD Lenders under Bankruptcy Rule 9019, is a final order that the Court had jurisdiction to enter. *See also, e.g., Miller v. Lim (In re Miller Parking Co., LLC)*, 510 B.R. 123, 127 (E.D. Mich. 2014) (reviewing order approving settlement in bankruptcy as "final and immediately appealable"); *In re Reeves*, 521 B.R. 827, 833 (Bankr. E.D. Tenn. 2014) ("An order approving compromise and settlement

8

under Fed. R. Bankr. P. 9019 has the same res judicata effect as any other final order with respect to the subject matter of the order." (citations omitted)); *Ritzen Grp., Inc. v. Jackson Masonry, LLC (In re Jackson Masonry, LLC)*, 906 F.3d 494 (6th Cir. 2018) (discussing the finality of orders in bankruptcy), *cert. granted*, 204 L. Ed. 2d 263 (2019).

Second, this declaratory judgment action involves the same parties that were involved in connection with the Settlement Motion in Debtors' jointly-administered main bankruptcy case, and Defendants do not argue otherwise. Bankruptcy Rule 9019 requires notice to interested parties, specifically including creditors, prior to approval of a settlement. FED. R. BANKR. P. 9019(a). There is no dispute that Defendants were creditors (and post-petition lenders) in Debtors' bankruptcy cases. They received notice of the Settlement Motion via service on their counsel, and they appeared at the hearing through counsel. Further, as explained above, Trustee was appointed as the Chapter 7 Trustee for each Debtor in April 2015, and as a result is the successor-in-interest of Debtors' estates with respect to the interests that the JAD Lenders conveyed under the JAD Settlement Order. *See*, *e.g.*, *Eisenberg v. Toledo-Lucas Cty. Port Auth. (In re BX Acquisitions, Inc.)*, 588 B.R. 798, 806-07 (Bankr. N.D. Ohio 2018) (citations omitted), *aff'd,* BAP No. 18-8014, 2019 Bankr. LEXIS 1258 (B.A.P. 6th Cir. Apr. 19, 2019).

Third, it was apparent from the Settlement Motion that the proposed settlement involved the avoidance and conveyance of the JAD Lenders' interests in the Equipment Collateral, and Defendants had a full and fair opportunity to object to the Settlement Motion to assert their interests in that collateral. Further, the Settlement Order's plain language confirms that it impacted Defendants' rights; it expressly stated: "[t]he JAD Lenders shall release and transfer their liens on [the Equipment Collateral] to the Debtors' estates under 11 U.S.C. §§ 544-551. *All [Equipment Collateral] and proceeds thereof shall be retained by the Debtors' Estates for*

*disposition in the sole discretion of the Debtors' Estates.*"  [Settlement Order at 5-6 (emphasis added).]   Accordingly, if Defendants perceived that they had an interest in the Equipment Collateral superior to the one the JAD Lenders were transferring to Debtors' Estates, and they did not want to be bound by an order that permitted Debtors' estates to retain possession of the Equipment Collateral and dispose of it in their sole discretion, Defendants had an obligation at that time to object to the Settlement Motion to preserve their rights.   They did not.   Defendants also did not appeal from the Settlement Order and may not now collaterally attack it.   *See*, *e.g.*, *HNRC*, 549 B.R. at 481-82

Finally, an identity of the causes of action exists here.   "Identity of causes of action means an identity of the facts creating the right of action and of the evidence necessary to sustain each action."  *Id*. at 483 (quoting *Sanders Confectionery Prods. v. Heller Fin., Inc.*, 973 F.2d 474, 484 (6th Cir. 1992)).   As stated above, the parties' rights to and interests in the Equipment Collateral—and the ability of Debtors' Estates to retain the equipment collateral and dispose of same in their sole discretion—were at issue in April 2015 in connection with the Settlement Motion and the Settlement Order's entry, and the same operative facts are at issue in this action.

The Settlement Order is entitled to preclusive effect against Defendants.   As a result, Trustee's Motion is GRANTED and she is entitled to a declaratory judgment in her favor on Count 1.

## II.    The Cash Collateral Order Establishes Trustee's Entitlement to a Declaratory Judgment in her Favor on Count 2.

In Count 2 of her Complaint, Trustee requests a declaration that, based on the Cash Collateral Order's terms, Defendants do not hold "Adequate Protection Liens" on "Avoidance Actions," "Specified Litigation Claims," or the proceeds thereof.   The plain language of the Cash Collateral Order supports her argument and Trustee is entitled to the relief requested.

    **A.    The Code allows a post-petition lender to obtain a "superpriority claim" and a "priming lien."**

The Code contains a structure by which a chapter 11 debtor may incur debt and obtain credit post-petition. *See* 11 U.S.C. § 364. Section 364(a) permits a debtor to incur unsecured debt and obtain unsecured credit in the ordinary course of its business, without the bankruptcy court's prior approval, as an administrative expense of the debtor's estate under § 503(b)(1). Section 364(b) provides that, after notice and a hearing, a court may authorize a debtor to incur unsecured debt other than in the ordinary course of business as an administrative expense. In the chapter 11 context, treating a post-petition loan as an administrative expense benefits the post-petition lender because § 1129(a)(9)(A) requires allowed administrative expense claims to be paid on the plan's effective date (unless the claimholder agrees to different treatment).

In certain cases, however, a post-petition lender may demand protection beyond administrative expense treatment of its claim. *See In re Mayco Plastics, Inc.*, 379 B.R. 691, 698 (Bankr. E.D. Mich. 2008). "In those circumstances, [Sections 364(c)] and (d) provide the [c]ourt with authority to permit the Chapter 11 debtor to offer additional benefits to induce a party to make a loan or extend credit." *Id*. These provisions "provide[] certain incentives that a trustee or debtor in possession may offer, with court approval, to induce potential lenders to undertake the risks involved in providing post-petition financing to a bankruptcy estate." *Tully Constr. Co. v. Cannonsburg Envtl. Assocs. (In re Cannonsburg Envtl. Assocs.)*, 72 F.3d 1260, 1267 (6th Cir. 1996).

> "These incentives include granting the lender . . . a 'super-priority' claim under § 364(c)(1), or a lien on unencumbered estate assets under § 364(c)(2) or (3), on account of the *post-petition* credit extended." [*Transamerica Commercial Fin. Corp. v. Citibank, N.A. (In re Sun Runner Marine, Inc.)*, 945 F.2d 1089, 1092-93 (9th Cir. 1991)] (emphasis in original). Furthermore, section 364(d) provides that, under appropriate circumstances and after notice and a hearing, the court may authorize the obtaining of credit secured by a lien on encumbered property that is senior or equal to any existing lien on the property. 11 U.S.C. § 364(d).

11

Case 18-01003-tnw   Doc 36   Filed 07/19/19   Entered 07/19/19 16:02:46   Desc Main
Document      Page 12 of 14


>    *See also In re Cardinal Indus., Inc.*, 146 [B.R.] 720, 732 (Bankr. S.D. Ohio 1992) (citing *Sun Runner* with approval).

*Id*. "The priority over administrative expense claims granted under Section 364(c)(1) is known as a 'super-priority' claim." *In re VPH Pharm., Inc.*, Case No. 17-12701, 2018 U.S. Dist. LEXIS 3567, at *8 (E.D. Mich. Jan. 9, 2018) (citing *Mayco Plastics*, 379 B.R. at 701-02). "The secured lien that is senior or equal to any existing lien, granted under Section 364(d), is known as a 'priming lien.'" *Id*. (citing *Mayco*, 379 B.R. at 698).

### B. The Cash Collateral Order does not grant Defendants any rights in Avoidance Actions or Specified Litigation Claims or the proceeds thereof.

Paragraph 12 of the Cash Collateral Order grants certain interests to Defendants. First, it specifically grants the "Licking River Lenders" (i.e., Defendants) superpriority claims; each receives "[a]n allowed superpriority administrative expense claim pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code as provided for by section 507(b) of the Bankruptcy Code on account of the Adequate Protection Obligations (the "Superpriority Claim")." [Cash Collateral Order ¶ 12(a).] Significantly, Paragraph 12 limits the scope of this grant: "the Superpriority Claim may not be asserted against or paid from either Avoidance Actions or Specified Litigation Claims … or the proceeds thereof, including, without limitation, any property against which a lien is avoided under section 544(a) of the Bankruptcy Code." [*Id*.]

Defendants also received Adequate Protection Liens in Paragraph 12 of the Cash Collateral Order. But these Adequate Protection Liens are not priming liens on Debtors' assets. Rather, the Adequate Protection Liens are narrower in scope. First, the Adequate Protection Liens include first priority liens on all of Debtors' previously-unencumbered property, defined as the "Unencumbered Collateral." [*Id*. ¶ 12(b)(i).] Notably, the term "Unencumbered Collateral" expressly excludes:

> (a) any claim or cause of action of the Debtors' estates under chapter 5 of the Bankruptcy Code, including sections 502(d), 510, 544, 545, 547, 548, 549, 550 or 551 of the Bankruptcy Code (collectively, the "Avoidance Actions") or any proceeds thereof, including, without limitation, any property against which a lien is avoided under section 544(a) of the Bankruptcy Code; or (b) any claim or cause of action of the Debtors' estates against (I) any director, officer or shareholder of the Debtors, (II) any other insider (as defined under section 101(31) of the Bankruptcy Code) of the Debtors, or (III) the Licking River Lenders, the JAD Lenders or Pryor Cashman, or any proceeds of the foregoing (the "Specified Litigation Claims").

[*Id.*]   Second, the Adequate Protection Liens include junior-priority replacement liens on Debtors' already-encumbered property "other than Avoidance Actions or Specified Litigation Claims …."   [*Id.* ¶ 12(b)(ii).]   Accordingly, using the definitions contained in the Cash Collateral Order, the Adequate Protection Liens unambiguously do not attach to or constitute liens on Avoidance Actions or Specified Litigation Claims.

To argue that the scope of the Adequate Protection Liens is broader than this, Defendants rely on a different subsection of Paragraph 12 of the Cash Collateral Order.   They note that Paragraph 12(d) provides:

> (d) Restrictions on Granting Postpetition Liens. Except for the Carve-Out and liens on Accounts Receivable in accordance with Paragraph 15(c) hereof, *under no circumstance shall the Adequate Protection Liens be (A) subject or subordinate to (I) any lien or security interest that is avoided and preserved for the benefit of any of the Debtors and their estates under section 551 of the Bankruptcy Code* or (II) any lien or security interest arising on or after the Relief Dates, or (B) subordinated to or made *pari passu* with any other lien, claim or interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

[*Id*. ¶ 12(d) (emphasis added).]   This provision, however, specifically employs the defined term "Adequate Protection Liens."   As defined, the Avoidance Actions and Specified Litigation Claims and their proceeds are not subject to the Adequate Protection Liens.   Therefore, Paragraph 12(d) does not extend the scope of Defendants' Adequate Protection Liens to encumber Avoidance Actions, Specified Litigation Claims, or the proceeds thereof.

13

In fact, a final provision of the Cash Collateral Order confirms this conclusion.

Paragraph 33 states:

> Notwithstanding anything to the contrary herein, nothing in this Final Order shall be construed, to (a) grant any person or entity a lien or other encumbrance on any Avoidance Action or Specified Litigation Claim, or (b) grant any person or entity superpriority administrative claims with respect to the proceeds of any Avoidance Action or Specified Litigation Claim.

[*Id.* ¶ 33.]

The Cash Collateral Order is unambiguous. Based on its plain language, Trustee's Motion is GRANTED. Trustee is entitled to a declaratory judgment in her favor on Count 2.

## CONCLUSION

For the foregoing reasons, Trustee's Motion is GRANTED in full. A separate judgment will be entered concurrent with this Memorandum Opinion.

14

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Tracey N. Wise*
**Bankruptcy Judge**
**Dated: Friday, July 19, 2019**
**(tnw)**